IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| LONNIE POTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-05050-CV-SW-NKL-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Lonnie Potter's ("Potter") Social Security Complaint [Doc. # 4]. Potter seeks judicial review of the Commissioner's denial of his request for disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act. The Administrative Law Judge ("ALJ") found that Potter was not entitled to benefits and such determination became the final decision of the Commissioner when the Appeals Council denied Potter's request for review. Potter has exhausted his administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court concludes that the ALJ erred in disregarding the opinions of Potter's treating medical providers and failed to adequately address Potter's

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

mental limitations, this matter is remanded to Defendant with instructions for a new hearing where a proper RFC is to be determined, consistent with this order.

## I. Factual Background

Lonnie Potter worked as a poultry hanger, forklift operator, hand packager, material handler and an industrial cleaner between 1989 and 2003, the onset of his claimed disability. (Tr. 18, 107). Between 1999 and 2004, Potter visited Rodney McFarland, M.D., for indigestion, heartburn and complications related to Chronic Obstructive Pulmonary Disease ("COPD"), including weight loss, respiratory difficulty and hand tremors. At McFarland's office, Freeman Neosho Physicians Group, Potter also received treatment from Frank Tisdale, F.N.C.P., a nurse practitioner. (Tr. 324). The medical evidence presented to the ALJ shows that Potter's respiratory health steadily deteriorated during this period, including periods of pneumonia and changes consistent with emphysema. Potter also complains of arthritic pain and back pain resulting from a fall down a flight of stairs. (Tr. 20). On August 10, 2000, Potter was diagnosed with Graves' disease, the most common form of autoimmune hyperthyroidism. Potter has been given multiple prescriptions for his COPD, Graves' disease and pain.

In June, 2003, Potter was placed on a trial of Zoloft for chronic worry, anxiety and sleeping difficulties. (Tr. 221). His treater at the Ozarks Counseling Center found that Potter had problems with his memory. (Tr. 366).

Tisdale completed a Medical Source Statement – Mental on May 1, 2006, in which he concluded that Potter was markedly limited in his ability to interact appropriately with

2

the general public and in his ability to understand instructions and respond appropriately to criticism from supervisors. (Tr. 324). Tisdale indicated that Potter was moderately limited in his ability to remember locations and had difficulty performing activities within a schedule. Tisdale further found that Potter was moderately limited in his ability to work with co-workers without distracting them or exhibiting behavioral extremes. He also failed to adhere to basic standards of neatness and cleanliness. (Tr. 323-324). However, on February 9, 2005, Kenneth Burstin, Ph.D., a State agency non-examining psychological consultant, determined that Potter's anxiety disorder was not severe and caused only mild restriction of daily living and social functioning and had no effect on Potter's concentration, persistence or pace. (Tr. 257). It is undisputed that Potter had slow mental functioning with a history of trouble reading and writing.

The ALJ was provided three Medical Source Statements- Physical, two by Potter's treating practitioners, Tisdale and William Webb, M.D., and one by Ashley Aldrich, M.D., a consulting physician.

Tisdale concluded that Potter could lift and/or carry five pounds frequently and ten pounds occasionally; stand and/or walk continuously for fifteen minutes and less than one hour throughout an eight-hour day; sit for four hours continuously and eight hours throughout an eight-hour day; was limited in his ability to push and/or pull because Potter easily becomes short of breath; could only occasionally climb, stoop, kneel, crouch, crawl, reach, handle, and speak; could frequently balance, finger, feel, see, and hear. (Tr. 320-321). Furthermore, Tisdale concluded that Potter needs to avoid any exposure to

dust and fumes; avoid moderate exposure to weather, wetness/humidity, vibrations, hazards, and heights; and avoid concentrated exposure to extreme heat and cold. (Tr. 321).

On August 19, 2006, Ashley examined Potter and concluded that he could lift and carry twenty pounds frequently and fifty pounds occasionally; could stand/walk, with normal breaks, approximately six hours of an eight hour work day; needed to periodically alternate sitting and standing; and could push and pull without limitation. In her opinion, Potter could occasionally climb, balance, kneel and crouch, but should not regularly crawl or stoop; should have no more than limited exposure to dust, humidity/wetness and fumes, odors, chemicals or gases; and had no manipulative, visual, communicative or other environmental limitations. (Tr. 20-21).

In October and November, 2006, William Webb, M.D., examined Potter and concluded that Potter could lift and/or carry five pounds frequently and ten pounds occasionally; stand and/or walk for thirty minutes continuously and for up to four hours throughout an eight-hour work day; sit for fifteen minutes continuously and less than one hour throughout an eight-hour work day; and was limited in his ability to push and/or pull. (Tr. 388). In addition, Webb concluded that Potter could only occasionally climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, and feel. (Tr. 389). Furthermore, Webb wrote that Potter was to avoid any exposure to extreme heat or cold, weather, wetness/humidity, dust/fumes, vibration, hazards, and heights. (Tr. 389). Webb also stated that Potter needed to lie down or recline three times during an

4

eight-hour work day for twenty minutes at a time due to pain. (Tr. 389).

On January 22, 2007, the ALJ issued an unfavorable decision. (Tr. 14-27). The ALJ concluded that Potter suffers from the severe impairments of Chronic Obstructive Pulmonary Disease, emphysema, degenerative joint disease of the knee, thyroid disease, and degenerative disc disease of the lumbar spine. (Tr. 18-19). The ALJ gave the opinions of Tisdale "little weight" and completely disregarded Webb's Medical Source Statement as "patently unreasoned and unsupported by clinical findings or any other basis." (Tr. 23). The ALJ held that Potter retained the ability to lift twenty pounds frequently and fifty pounds occasionally. (Tr. at 27). In addition, the ALJ held that Potter is able to stand and/or walk for approximately six hours total during an eight-hour work day. (Tr. at 27). Moreover, the ALJ concluded that Potter must avoid prolonged sitting or standing; is able to push/pull without limitation; is able to occasionally climb, balance, crouch and kneel; is able to, but should avoid working in areas that require him to crawl or stoop; and is able to reach, handle, finger and feel without limitation. (Tr. at 27). Finally, the ALJ concluded that Potter must avoid exposure to extreme levels of dust, fumes, odors, chemicals, gases, humidity or wetness. (Tr. at 27). Relying on the testimony of the vocational expert, George Horne, the ALJ concluded that Potter was unable to perform his past relevant work, and that Potter has no skills from his past work experience that are readily transferable to work within his residual functional capacity. (Tr. at 27). However, the ALJ then relied on the vocational witness's testimony to conclude that Potter retained the capacity to perform work at the light exertional level and

5

retained the capacity to perform the light unskilled job of small products assembler. (Tr. at 27).

## II.     Discussion

To establish that he is entitled to benefits, Potter must show that he was unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d) and § 1382c(a)(3)(A).

### A.     The ALJ Failed to Identify All of Potter's Severe Impairments

Despite the mental and emotional impairments diagnosed by Tisdale and Aldrich, and testified to by Potter, the ALJ did not find that Potter's anxiety or learning disorder were "severe" impairments within the meaning of the Social Security regulations. (Tr. 15). However, even Aldrich concluded that Potter was positive for "memory difficulties" and "emotional problems." (Tr. 374).

In the Eighth Circuit, for an impairment not to be considered "severe" within the meaning of the Social Security regulations, it can have "no more than minimal effect on [a] claimant's ability to work." *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). In this case, Tisdale diagnosed Potter with an anxiety disorder in addition to moderate limitation in his ability to remember locations and work-like procedure; understand and remember very short and simple instructions; understand and remember detailed instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular

6

attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work related decisions; complete a normal work day and work week without interruption from psychologically based symptoms and to perform at a constant pace without an unreasonable number and length of rest periods. Potter's medical records and testimony suggest that he had trouble performing everyday activities such as grocery shopping, mowing the lawn and taking messages. (Tr. 425-26). Given the evidence of Potter's anxiety, learning disabilities and "emotional problems," it was unreasonable for the ALJ to find that, because Potter's anxiety did not require continuing psychiatric or psychological treatment, his anxiety was not severe, particularly in light of his Zoloft prescription and his financial limitations. Failure to get regular treatment for anxiety, standing alone, does not mean the anxiety has no impact on a claimant's ability to work. Moreover, the ALJ did not address Potter's learning disability or inquire further as to Aldrich's diagnosed "emotional problems," which may have also affected his ability to work. The ALJ did, however, seek clarification from Aldrich as to Potter's ability to lift 20 pounds frequently and 50 pounds occasionally. The evidence as a whole does not support the ALJ's conclusion that Potter's mental health limitations were not severe.

### B. The ALJ Failed to Assign Proper Weight to the Medical Evidence

The Eighth Circuit Court of Appeals requires an ALJ to consider all evidence in the record when determining a claimant's residual functional capacity. *Pearsall v.*

7

*Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citation omitted). In determining Potter's RFC, the ALJ concluded that Potter retained the ability to do "light unskilled job of small products assembler." (Tr. 27). The ALJ based his assessment of Potter's abilities primarily on Aldrich's report, because it was "thorough" while Tisdale's and Webb's examinations were not "thorough." There is simply no evidence to suggest that Aldrich's examination was more "thorough" than Tisdale's, whose treatment notes occupy approximately twenty pages of the record. (Tr. 215-233). Similarly, Webb gave Potter a physical examination that included assessments similar to Aldrich's although with a more limiting view of Potter's lifting restrictions. (Tr. 392). Aldrich's report contained no more extensive treatment notes than did Tisdale's or Webb's. *Id*.

A treating physician's opinion is generally given controlling weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). Although Webb was Potter's treating physician beginning only from October 2006, his findings, with the exception of needing to regularly lie down during the day, were consistent with those of Tisdale who had obviously treated Potter under McFarland's authority from 1999. (Tr. 410).[2]

The Commissioner correctly argues that, as a nurse practitioner, the ALJ may give Tisdale's opinion "great weight" but is not required to give it "controlling weight." *See* 20 C.F.R. 404.1527(d). However, in this case, the ALJ stated that he gave Tisdale's

---

[2]Citing *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004), the Commissioner argues that the ALJ may disregard Webb's opinion because he saw Potter only twice. However, in *Randolph*, the ALJ did not reject the treating physician's opinion "in toto" as the ALJ did in this case. *Id*. at 839. Moreover, Webb's treatment notes are largely consistent with Tisdale's, whose treatment extended over a longer period of time.

8

opinion "little weight" and it appears that he in fact gave it no weight whatsoever. The ALJ further argued that the activities listed in Potter's original questionnaire - cleaning his residence, preparing meals, washing dishes, mowing the lawn - diminished the credibility of his limitations. However, the record is clear that Potter has trouble reading and writing and did not complete his own record of activities of daily living. (Tr. 259). His testimony made clear that he was limited even in those daily activities listed in his original questionnaire. In this case, the ALJ erred in disregarding, without any significant discussion, Tisdale's and Webb's opinions while clearly adopting the opinion of Aldrich, although not her conclusions as to Potter's memory difficulties and "emotional problems." Considering the record as a whole, the ALJ has not provided an adequate explanation as to why Aldrich's conclusions are controlling. As a result, the ALJ erred in determining Potter's RFC.

## III.  Conclusion

Because the ALJ did not properly determine Potter's RFC and failed to take into account Potter's mental limitations, including his difficulty with reading and writing, the decision of the Commissioner is reversed and the matter is remanded for a new administrative hearing where a proper RFC is to be determined, consistent with this order.

Accordingly, it is hereby

ORDERED that Potter's Petition [Doc. # 4] is GRANTED. The decision of the Commissioner is REVERSED and the case is REMANDED with instructions.

s/ Nanette K. Laughrey
                                                     NANETTE K. LAUGHREY
                                                     United States District Judge

Dated: May 16, 2008
Jefferson City, Missouri

10